[Civ. No. 39870. Second Dist., Div. Five. May 24, 1973.]

PAUL H. GOODLEY, Plaintiff and Appellant, v.
RICHARD A. SULLIVANT, Defendant and Appellant;
PHILIP M. HALLORAN, Defendant and Respondent.

COUNSEL

Irwin O. Spiegel for Plaintiff and Appellant.

Musick, Peeler & Garrett, Joseph A. Saunders, Lawrence E. Stickney, Home & Clifford and Richard R. Clifford for Defendant and Appellant.

Spray, Gould & Bowers, Philip L. Bradish and Ellis J. Horvitz for Defendant and Respondent.

OPINION

**STEPHENS, J.**—This appeal arises out of civil litigation in which plaintiff Dr. Goodley sued defendants Dr. Sullivant, Dr. Halloran, Dr. Wood, and nurse Lovelady in defamation and in interference with the practice of a profession.

In brief, prior to July 13, 1965, plaintiff had been a member of the medical staff of Jared Sidney Torrance Memorial Hospital (hereinafter either the hospital or Torrance Memorial). On June 12, 1965, nurse Lovelady attended a meeting of the hospital's liaison committee and made statements charging Dr. Goodley with having committed acts of professional misconduct. On July 13, 1965, Dr. Sullivant and Dr. Wood attended a meeting of the hospital's executive committee whereat Dr. Sullivant repeated the charges of nurse Lovelady, charged Dr. Goodley with having committed other acts of professional misconduct, and recommended that the executive committee either censure Dr. Goodley, or cause the matter to be considered by the hospital's grievance committee.[1] The executive committee thereupon voted to suspend Dr. Goodley from the hospital's medical staff. Dr. Sullivant then informed Dr. Goodley by letter of the executive committee's action and further informed Dr. Goodley of the right to appeal to the hospital's grievance committee.

Dr. Goodley did request a hearing before the grievance committee, and, in preparation for that hearing, Dr. Halloran, as chairman of that committee, was alleged to have republished to the other members of the committee[2] the aforementioned statements of Dr. Sullivant. The grievance

---

[1]Dr. Sullivant was the hospital's chief of staff and was the chairman of the executive committee.

[2]The grievance committee was composed of Dr. Halloran, Dr. Wood, and three other doctors; all members of the grievance committee were former chiefs of staff of the hospital.

committee met on July 27, 1965, heard a statement by Dr. Goodley, and voted to recommend to the executive committee that Dr. Goodley's suspension be reduced to one year.

Dr. Goodley thereafter instituted litigation against Dr. Sullivant, Dr. Halloran, Dr. Wood, and nurse Lovelady alleging (1) defamation, and as a direct consequence of the defamation, (2) interference with the practice of a profession. At trial, and after Dr. Goodley had presented his case, nurse Lovelady was granted a directed verdict. The jury returned general verdicts against Dr. Goodley and in favor of Dr. Wood, in favor of Dr. Goodley and against Dr. Sullivant for $75,000, and in favor of Dr. Goodley and against Dr. Halloran for $35,000. Dr. Sullivant and Dr. Halloran each moved for judgment notwithstanding the verdict, and the motion was denied as to Dr. Sullivant, but was granted as to Dr. Halloran. Dr. Sullivant appeals from the judgment and from the denial of his motion for judgment notwithstanding the verdict. Dr. Goodley appeals from Dr. Halloran's judgment notwithstanding the verdict.

The judgment in favor of Dr. Goodley and against Dr. Sullivant must be reversed, and the judgment against Dr. Goodley and in favor of Dr. Halloran must be affirmed. Civil Code section 47, subdivision 2, affords a privilege for any publication made in "any (1) legislative or (2) judicial proceeding, or (3) in any other official proceeding authorized by law; . . ." This privilege has been interpreted to be absolute. (*Albertson* v. *Raboff,* 46 Cal.2d 375, 379 [295 P.2d 405].) This privilege has also been "interpreted to encompass those proceedings which resemble judicial and legislative proceedings, such as transactions of . . . quasi-judicial and quasi-legislative proceedings. [Citations.]" (*Ascherman* v. *Natanson,* 23 Cal.App. 3d 861, 865 [100 Cal.Rptr. 656] (hg. den.).)

In *Ascherman* v. *Natanson, supra,* a Dr. Ascherman had applied for staff privileges at a public hospital. The application was denied, but Dr. Ascherman was told that he was entitled to a hearing. Dr. Ascherman requested the hearing, and, in preparation for the hearing, the hospital's attorney conducted an interview with one of Dr. Ascherman's former colleagues, a Dr. Natanson. During the course of this interview, Dr. Natanson made defamatory remarks about Dr. Ascherman, and Dr. Ascherman thereafter sued Dr. Natanson for defamation. At trial, Dr. Natanson won a judgment notwithstanding the verdict. On appeal, the court held that Dr. Natanson's remarks had been "related to" (*id.,* at p. 865) the hospital's pending hearing, that the hearing was quasi-judicial, and, therefore, Dr. Natanson's remarks were subject to the absolute privilege afforded by Civil Code section 47, subdivision 2.

Dr. Goodley argues, however, that the court in *Ascherman* v. *Natanson* was wrong in holding that the absolute privilege of Civil Code section 47, subdivision 2, is applicable to the quasi-judicial proceeding of a medical committee. ■ Specifically, Dr. Goodley argues that the proceedings of a medical committee are not controlled by the absolute defamation-privilege of Civil Code section 47, subdivision 2, but, instead, are controlled by a conditional defamation-privilege afforded by Civil Code section 43.7.[3] The rationale of Dr. Goodley's argument is as follows: Section 47, subdivision 2, is a general defamation-privilege that is directed to all executive, legislative, and judicial proceedings; section 43.7, however, is a particular defamation-privilege that is directed exclusively to the medical profession; particular statutes control over general statutes, and, therefore, the conditional privilege of section 43.7 must control over the absolute privilege of section 47, subdivision 2.

The difficulty with Dr. Goodley's argument, however, is that section 43.7 has nothing to do with defamations. Section 43.7 provides a conditional privilege "for any *act* or *proceeding undertaken or performed*" by the members of a medical committee. (Italics added.) "Hospital staffs and medical and other professional organizations (as defined in [section 43.7]) commonly have committees to review the practices of its members and to recommend disciplinary action. Section 43.7 will prevent civil suits for damages by expelled or disciplined members against any such committee member. . . ." (36 State Bar J. (1961) at p. 667.) It seems clear, therefore, that section 43.7 is concerned with the *actions* taken by a medical committee (i.e., refusing, suspending, or revoking hospital privileges to any

---

[3]Civil Code section 43.7: "There shall be no monetary liability on the part of, and no cause of action for damages shall arise against, any member of a duly appointed committee of a state or local professional society, or duly appointed member of a committee of a medical staff of a licensed hospital (provided the medical staff operates pursuant to written bylaws that have been approved by the governing board of the hospital), for any act or proceeding undertaken or performed within the scope of the functions of any such committee which is formed to maintain the professional standards of the society established by its bylaws, if such committee member acts without malice, has made a reasonable effort to obtain the facts of the matter as to which he acts, and acts in reasonable belief that the action taken by him is warranted by the facts known to him after such reasonable effort to obtain facts. 'Professional society' includes legal, medical, psychological, dental, accounting, optometric, podiatric, pharmaceutic, and engineering organizations having as members at least a majority of the eligible licentiates in the area served by the particular society. The provisions of this section do not affect the official immunity of an officer or employee of a public corporation.

"This section shall not be construed to confer immunity from liability on any professional society or hospital. In any case in which, but for the enactment of the preceding provisions of this section, a cause of action would arise against a hospital or professional society, such cause of action shall exist as if the preceding provisions of this section had not been enacted."

doctor) and is not concerned with possible defamatory publications made by such a committee. Since we hold that section 43.7 is not applicable to defamations, it follows then that section 43.7 is not inconsistent with section 47, subdivision 2, and Dr. Goodley's argument, therefore, must fail.

■ Dr. Goodley contends further that, in any event, the rule of *Ascherman* v. *Natanson* must be limited to public hospitals, and therefore should not be available to Dr. Sullivant and Dr. Halloran because Torrance Memorial is a private hospital. We disagree. In *Ascherman* v. *Natanson* (at p. 866), the court held that "[t]he primary factors which determine the nature of [quasi-judicial] proceedings are: (1) whether the administrative body is vested with discretion based upon investigation and consideration of evidentiary facts, (2) whether it is entitled to hold hearings and decide the issue by the application of rules of law to the ascertained facts and, more importantly (3) whether its power affects the personal or property rights of private persons [Citation]." In accordance with this test, we note that Business and Professions Code section 2392.5 provides in part that a hospital having five or more physicians must establish rules that specifically. include provisions that the hospital must be organized into a medical staff with appropriate bylaws, that the medical staff must be self-governing, and that the medical staff must be limited to doctors who are competent in their respective fields, worthy in character, and worthy in professional ethics.[4] In this regard, Torrance Memorial had established the liaison committee, the executive committee, and the grievance committee. We find that the actions that these committees took in regard to Dr. Goodley were within the *Ascherman* v. *Natanson* definition of quasi-judicial proceedings, and, therefore, that publications made in relation to those proceedings were entitled to the absolute privilege afforded by Civil Code section 47, subdivision 2.[5]

■ Dr. Goodley contends further, however, that Dr. Sullivant and Dr. Halloran should not be able to argue absolute privilege on appeal, for they did not raise absolute privilege in either their pleadings or at trial. We disagree. ■ "The rule that the appellate court will not consider points not raised below . . . is limited to matters involving only the rights and interests of the litigant which could have been cured in the trial court.

---

[4]See also Business and Professions Code section 2392.6.

[5]According to the bylaws of Torrance Memorial, the grievance committee should have been chaired by the chairman of the credentials committee, a Dr. Manson, and therefore Dr. Halloran's chairing of the grievance committee was in technical violation of the bylaws. For the purpose of asserting an absolute privilege for defamation, however, "mere color of jurisdiction, in fact assumed, is sufficient. [Footnote omitted.]" (Prosser, Law of Torts (4th ed. 1971) at p. 780.)

It does not apply to . . . complete failure to state a cause of action . . . ." (6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 280, p. 4269.) ■ "If a complaint pleads facts which show the publication was made in a judicial proceeding, it does not state a cause of action unless it goes further and pleads other facts which show that in contemplation of law the publication was not in fact made in a judicial proceeding." (*Whelan* v. *Wolford,* 164 Cal.App.2d 689, 693-694 [331 P.2d 86]; accord, *Stevens* v. *Snow,* 191 Cal. 58, 64-65 [214 P. 968]; *Pettitt* v. *Levy,* 28 Cal.App.3d 484 [104 Cal.Rptr. 650]; *Reid* v. *Thomas,* 99 Cal.App. 719 [279 P. 226]; 3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, § 596, p. 2236.) ■ A complete reading of Dr. Goodley's complaint discloses that Dr. Goodley alleged no defamation other than that "related to" (*Ascherman* v. *Natanson, supra,* at p. 865) the proceedings of the liaison, executive, and grievance committees. As a consequence, Dr. Goodley's complaint failed to state a cause of action in defamation. Further, Dr. Goodley did not cure this failure at trial; the evidence adduced on behalf of Dr. Goodley, and the evidence adduced on the issue of conditional privilege, clearly shows that Dr. Goodley's action was founded upon no alleged defamation other than that which was related to the committee meetings. Dr. Goodley, therefore, neither stated a cause of action for defamation in his complaint, nor at trial, and that failure may be raised for the first time on appeal. The verdicts in favor of Dr. Goodley, therefore, may not be upheld on the basis of a defamation.

■ Likewise, the verdicts in favor of Dr. Goodley may not be upheld on the basis of an interference with the practice of a profession. Such an action will lie only where there exists a lack of sufficient justification, and sufficient justification "is determined . . . by balancing, in the light of all the circumstances, the respective importance to society and the parties of protecting the activities interfered with on the one hand and permitting the interference on the other. [Citations.]" (*Willis* v. *Santa Ana etc. Hospital Assn.,* 58 Cal.2d 806, 810 [26 Cal.Rptr. 640, 376 P.2d 568].) In the case before us, the interference with Dr. Goodley's practice was alleged to have resulted from the aforementioned defamation. Since we have concluded that the defamation was privileged, then, on balance, we must necessarily conclude that any concomitant interference with Dr. Goodley's practice was also privileged.

The judgment in favor of Dr. Goodley and against Dr. Sullivant is reversed with directions to enter a judgment in favor of Dr. Sullivant notwithstanding the verdict; the judgment against Dr. Goodley and in favor

of Dr. Halloran is affirmed. Dr. Sullivant and Dr. Halloran to recover costs from Dr. Goodley.

Kaus, P. J., and Ashby, J., concurred.