[Civ. Nos. 21364, 21365. Second Dist., Div. Three. Nov. 21, 1956.]

JULIA C. SPEAR, Appellant, v. THE BOARD OF MEDI-
CAL EXAMINERS of the DEPARTMENT OF PRO-
FESSIONAL AND VOCATIONAL STANDARDS
et al., Respondents.

[Two Cases.]

Marion P. Betty for Appellant.

Edmund G. Brown, Attorney General, and Howard S. Goldin, Deputy Attorney General, for Respondents.

WOOD (Parker), J.—Petitioner sought an alternative writ of mandate in the superior court to compel the Board of Medical Examiners to file an accusation of unprofessional conduct against a doctor of medicine. There was no hearing in the superior court. Petitioner appeals from an order denying the petition for the writ.

Petitioner made a motion in the superior court for an order to correct and augment (1) the clerk's transcript and (2) the record of the proceedings before the Board of Medical Examiners. The motion was denied. Petitioner filed a notice which states that she appeals from the order denying the motion.

The appeal from the order denying the petition for the writ and the purported appeal from the order denying said motion will be considered in this opinion.

Petitioner contends that the trial court erred in denying the petition for the writ without an argument, a hearing, or a trial de novo. She argues that it was the mandatory duty of the Board of Medical Examiners (hereinafter referred to

as the board) to file an accusation against the doctor; that the board acted arbitrarily, capriciously and in abuse of its discretion in failing to file an accusation against the doctor; that the board acted arbitrarily, capriciously and in abuse of its discretion in refusing to hear further evidence of appellant regarding an accusation against the doctor.

The petition alleges: that Fannie May Crawley died in Los Angeles about July 9, 1949; about June 21, 1954, petitioner requested the board to file an accusation against J. Park Dougall, M. D., a licensee of the board; petitioner offered evidence before the board showing that the doctor violated section 2411 of the Business and Professions Code; it was the ministerial duty of the board to file the accusation; at the hearing before the board on June 21, 1954, which lasted 47 minutes, petitioner presented uncontradicted evidence that about July 10, 1949, the doctor made a false death certificate regarding the cause of death of Mrs. Crawley in that he falsely stated that the causes of her death were "Carcinoma, Metatastic [Metastatic] A.B.D. 2 years. Due to 'Carcinoma, pylorohepatic + 5 years.' "; said statements were false and were not based upon any fact regarding the actual cause of death of Mrs. Crawley; the facts shown in the hearing before the board were that she never had a history or diagnosis of such diseases, but all tests made of her body were contrary thereto; it was shown at the hearing that during the nine weeks the doctor had treated Mrs. Crawley he never treated her for the causes set forth in the death certificate; petitioner did not have a fair hearing; before petitioner was heard, a deputy attorney general erroneously advised the board not to file an accusation against the doctor; two of the board members read the hospital record of Mrs. Crawley incorrectly to the other members; petitioner was interrupted constantly and prevented from presenting her case fully; petitioner never received any findings from the board; the president of the board stated in substance there was no history in the hospital record to show that she died of cancer as stated in the certificate; about December 6, 1954, petitioner received a letter from the board advising her that the board had considered the petition that she had presented requesting the filing of an accusation against the doctor, and had considered all the testimony presented at the meeting of the board on June 21, 1954, and after such consideration the board had determined that the petition and the evidence presented did not indicate that the doctor had violated any provisions of the Medical Practice

Act which would warrant or justify the filing with the board an accusation charging the doctor with unprofessional conduct and justifying disciplinary action against his physician's and surgeon's certificate under said act.

The petition further alleges that the petitioner is beneficially interested in the petition as the daughter of Mrs. Crawley, as administratrix of her estate, and as a citizen, resident, taxpayer of Los Angeles, California; she has no plain, speedy or adequate remedy in law to set aside the decision of the board; she has no recourse in law or equity unless the board is ordered to show cause why it should not exercise its ministerial duty by filing an accusation against the doctor because he knowingly and in bad faith filed such false death certificate, and why the doctor should not correct the said false death certificate; the board acted wrongfully, arbitrarily, capriciously and violated its administrative or ministerial duty in refusing to file an accusation for unprofessional conduct against the doctor.

The petition also alleged that the record of the hearing before the board, consisting of the transcript of the testimony given at the hearing, a certified copy of the death certificate, and the hospital record, was incorporated as a part of her petition. (Such record was filed with the petition and was before the superior court.)

The board filed "Points and Authorities" in the superior court in opposition to the issuance of an alternative writ of mandate. On February 1, 1955, the judge, without a hearing, made an order denying the writ. On the same day the judge signed and filed a written order which provided, in part: "The transcript of the hearing before the Board of Medical Examiners, held on June 21, 1954, shows that petitioner had a full and fair hearing on the question as to whether the Board should file an accusation against Dr. Dougall. In addition to the testimony the Board had before it and considered the hospital records relating to Mrs. Crawley. Petitioner had a fair hearing before the Board. The record thereof is incorporated in the petition by reference. (Par. X.) The Board exercised its discretion and decided not to file an accusation. A writ of mandate will be issued only to compel the performance of an act which the law specifically enjoins; neither will a writ issue to control the exercise of official discretion. The petition fails to state a cause of action. The writ is denied."

As above stated, petitioner contends that it was the manda-

tory duty of the board to file an accusation of unprofessional conduct against the doctor. She argues that the uncontradicted evidence produced by her before the board, and before the superior court by her verified petition for a writ of mandate, showed that the doctor had knowingly executed and filed a false certificate as to the cause of death of Mrs. Crawley in that he had falsely certified that death was caused by cancer; that the filing of such certificate by the doctor constituted unprofessional conduct within the provisions of section 2411 of the Business and Professions Code; that it was therefore the mandatory duty of the board, under the provisions of section 2361 of the Business and Professions Code, to file such an accusation against the doctor.

Section 2411 of the Business and Professions Code, above referred to, provides: "Knowingly making or signing any certificate . . . which falsely represents the existence or nonexistence of a state of facts, constitutes unprofessional conduct . . . ." Section 2361 of said code, above referred to provides: "The board shall take action against any holder of a certificate, who is guilty of unprofessional conduct which has been brought to its attention . . . ." Section 11503 of the Government Code provides that a hearing to determine whether a license shall be revoked, suspended, limited or conditioned shall be initiated by filing an accusation.

Although there were statements by petitioner before the board to the effect that the doctor had told petitioner, prior to Mrs. Crawley's death, that Mrs. Crawley did not have cancer, it cannot be said accurately that the evidence was uncontradicted that the death certificate was false. ▮ The certificate, being a public record, was presumed to be true. The presumption was evidence. The hospital records, which were before the board, were extensive and covered a period of approximately five weeks. The members of the board were doctors of medicine and they were entitled, of course, to consider the hospital records in determining whether an accusation should be filed. Those records contained entries made by the attending doctor, an interne, three consulting doctors, and special nurses. Also, the records contained several laboratory reports. One of the entries made by the interne (about a week before the patient died) was that there was an abdominal hard mass with right supra pubic tenderness, and the condition of the patient appeared to be terminal. Also, there were entries therein (one by the interne, and several by the nurses) that there was vaginal bleeding. There was an

entry therein by the attending doctor to the effect that the final diagnosis was cancer. That entry was: "Diagnosis final= Meta[s]tatic Carcinoma, Pyloro-Hepatic Carcinoma." A member of the board stated at the hearing that the record regarding the abdominal hard mass, above referred to, would indicate that Mrs. Crawley possibly had cancer and an obstruction of the bowel. Even if it be assumed that the board accepted as true petitioner's statement as to the doctor's diagnosis before the death, the board might have concluded from the hospital records that after the death, and irrespective of any prior inconsistent statements as to diagnosis, the doctor made a true statement as to diagnosis in the death certificate, or at least he did not knowingly make a false statement as to diagnosis in the certificate. The board was not required to file an accusation based solely upon the statements of petitioner that the doctor had told her, prior to the death, that Mrs. Crawley did not have cancer. If the doctor made a mistake as to diagnosis prior to the death, or if he purposely misstated the diagnosis prior to the death in an effort to relieve anxiety of relatives as to the illness, he was not bound to adhere to and continue the mistake or misstatement when he made the certificate of cause of death. It was his duty not to knowingly make a false certificate of death, regardless of his prior statements. Whether an accusation against the doctor should have been filed was a matter within the discretion of the board upon a consideration of all the evidence presented.

Appellant contends further that the board abused its discretion in not filing an accusation. She argues that she proved without contradiction that the doctor executed a false certificate as to the cause of death; and that the board, by acting arbitrarily, capriciously and in abuse of its discretionary power, failed to do its duty. The statements made hereinabove regarding the preceding contention are applicable here. ■ Of course, the board was not required to file an accusation merely because a request was made that an accusation be filed. ■ The board was required to consider the request and to determine, in its discretion, whether an accusation should be filed. It was not required to exercise its discretion in a particular manner. (See *Lindell Co.* v. *Board of Permit Appeals*, 23 Cal.2d 303, 315 [144 P.2d 4].) ■ The court may compel an administrative agency to act, but it may not substitute its discretion for the discretion vested in the agency. (*Ibid.*) In the present case, the board did

act, by considering and ruling upon petitioner's request that an accusation be filed. A hearing, which lasted 47 minutes, was held and petitioner and her counsel made extended statements. As above shown, the hospital records were before the board for its consideration. The above references to statements in the records were sufficient to indicate that there was substantial basis for the board's refusal to file an accusation. A writ of mandate will not lie to control official discretion. (*Friedland* v. *Superior Court*, 67 Cal. App.2d 619, 623 [155 P.2d 90].) In *Boyne* v. *Ryan*, 100 Cal. 265 [34 P. 707], a writ of mandate was sought to compel a district attorney to commence an action to recover money. The court therein said at page 267: "[A] court will not do a vain or fruitless thing, or undertake by *mandamus* what cannot be accomplished. . . . Now it is not contended that the language of section 8 goes any further than to declare it to be the duty of the district attorney 'to institute suit.' But to compel a district attorney, against his will and contrary to his judgment, to merely *commence* an action would be an idle thing in the absence of power to compel him to prosecute it to final determination; and such power is not contended for by appellant. And, indeed, there could be no practicable exercise of such power. The court granting the writ of mandate could not follow the district attorney through the case . . . ." In the present case no useful purpose would be served, even if the court were empowered to direct the board to file an accusation. The board, after filing an accusation, could in the exercise of its discretion determine that there was no basis for a disciplinary order.

The board did not abuse its discretion in refusing to file an accusation.

Appellant asserts further that she was not given a fair hearing by the board. She argues that the board was prejudiced by reason of statements made by the assistant attorney general, before any evidence was presented, wherein he argued and recommended against any accusation being made against the doctor. Those statements were to the effect that he had examined the file which petitioner had presented to the secretary of the board, and that the file did not indicate any evidence that would warrant an accusation; but the board "may well" desire not to take his recommendation and consider that an accusation should be filed. He also read a letter which he had sent to petitioner, about 10 days previously, which letter was to the effect that the attorney

general believed the evidence was insufficient. The attorney general is the legal counsel for the Board of Medical Examiners. (Bus. & Prof. Code, § 2116.) The transcript of the hearing shows that members of the board examined the hospital records, and asked petitioner many questions. It appears that the board carefully considered the evidence. It cannot be concluded that the board was prejudiced.

The contention that the board abused its discretion is not sustainable.

Appellant also contends that the court erred in denying the petition without a hearing or argument. The petition was filed January 31, 1955. The board filed Points and Authorities on the same day, January 31. The petition was denied the next day, February 1. ■ The court was not required to have a hearing or to permit argument upon the petition. (Code Civ. Proc., § 1094.) The court was empowered to deny the petition "out of hand." (*Wilson* v. *Los Angeles County Civil Service Com.*, 103 Cal.App.2d 426, 431 [229 P.2d 406].) ■ The transcript of the hearing, the death certificate, and the hospital records were incorporated as a part of the petition. "[A] petition alleging abuse of discretion which incorporates a transcript by reference will be examined in the light of the evidence contained in the transcript to determine whether a cause of action is stated, and the court may exercise its discretionary power to dismiss the petition on the merits or deny the issuance of the writ upon the theory that the petition plus the transcript shows no cause of action. Thus, the petitioner may lose his day in court by an 'out of hand' ruling of the court . . . ." (2 Cal.Jur.2d 352-353, § 213; see *Sipper* v. *Urban*, 22 Cal.2d 138, 140 [137 P.2d 425].)

As above shown, the court determined, among other things, that petitioner had a full and fair hearing, the board exercised its discretion, and the petition does not state a cause of action. The record supports the determinations of the court.

Respondent board asserts that the disciplinary proceeding is barred by laches. The death certificate was filed July 11, 1949. The petition herein for a writ of mandate states that "on or about" June 21, 1954, the petitioner requested the board to file an accusation. (The record does not show when an application or petition in the disciplinary proceeding was filed.) In view of the above conclusions, regarding the

merits of the proceeding, it is not necessary to determine this contention.

The order denying the petition for a writ of mandate should be affirmed.

*Appeal Number 21365*

■ As above stated, petitioner filed a notice which states that she appeals from an order denying her motion to correct and augment (1) the clerk's transcript and (2) the record of the proceedings before the board. Such an order is not appealable. In *People* v. *Gross*, 44 Cal.2d 859 [285 P.2d 630], it was held (pp. 860-861) that an order denying defendant's motion to correct and amend a clerk's transcript by striking out statements and substituting others was not an appealable order. (See also *McCord* v. *Plotnick*, 104 Cal.App.2d 495, 496 [231 P.2d 880]; *Cross* v. *Tustin*, 37 Cal.2d 821, 825-826 [236 P.2d 142].) In *People* v. *Gross, supra,* it was said at page 861: ''If, however, the record is deficient in any respect, defendant may apply to the District Court of Appeal for augmentation under rule 12 of the Rules on Appeal.'' In the present case, petitioner made a motion in this court to correct and augment the clerk's transcript and the reporter's transcript of the hearing before the board. The motion before this court was in substance the same as the motion in the trial court. This court denied the motion. The purported appeal from the order of the trial court should be dismissed.

The order denying the petition for a writ of mandate (case No. 21364) is affirmed. The purported appeal from the order denying the motion to correct and augment transcript and record (case No. 21365) is dismissed.

Shinn, P. J., and Vallée, J., concurred.