[Civ. No. 68223. Second Dist., Div. Four. Sept. 20, 1983.]

VICTOR HOGEN, Plaintiff and Appellant, v.
VALLEY HOSPITAL et al., Defendants and Respondents.

122

COUNSEL

Michael P. Calof for Plaintiff and Appellant.

Kirtland & Packard, Bonnie M. Adair, Harrington, Foxx, Dubrow & Canter, Patty Mortl, Clarke & Leary and Dale B. Goldfarb for Defendants and Respondents.

OPINION

**SCHNEIDER, J.**\*—This appeal is taken from an order of dismissal, following the sustaining without leave to amend of a demurrer to appellant's second amended complaint. The complaint sounds in malicious prosecution. Appellant, plaintiff below, is a medical doctor. Respondents are hospitals and a doctor, who allegedly filed a false report with the Board of Medical Quality Assurance (hereinafter BMQA), which resulted in the filing of charges against appellant. At the conclusion of a hearing before the board, it was found that no cause existed for the suspension or revocation of appellant's medical certificate. In its order sustaining the demurrers without leave to amend, the court cited *Spear* v. *Board of Medical Examiners* (1956) 146 Cal.App.2d 207 [303 P.2d 886], and *Long* v. *Pinto* (1981) 126 Cal.App.3d 946 [179 Cal.Rptr. 182]. A reading of those cases reveals that the court sustained the demurrer on the following two grounds:

1. That the communication from the hospital to the BMQA was absolutely privileged (Civ. Code, § 47, subd. 2); and

2. That the board had discretion to determine whether or not to file charges against appellant, and thus respondents were not responsible for the board's ultimate decision to bring those charges.

For the reasons hereinafter stated, we have concluded that only the second of the foregoing reasons supports the order sustaining the demurrer.

I

 With respect to the privileged publication, Civil Code section 47, subdivision 2, does provide that a publication is privileged if made in any judicial proceeding or in the initiation or course of any other proceeding

---

\*Assigned by the Chairperson of the Judicial Council.

authorized by law. Further, a hearing before the BMQA is such a proceeding. As the court stated in *Long* v. *Pinto, supra,* 126 Cal.App.3d at 948: "There is no doubt the letter to the BMQA is absolutely privileged. BMQA is an administrative agency responsible for the 'quality of medical practice carried out by physician and surgeon certificate holders under the jurisdiction of the board.' (Bus. & Prof. Code, §§ 2001; 2004, subd.' (e).) Pinto's letter was sent to prompt board action and was thus part of an official proceeding (*King* v. *Borges* (1972) 28 Cal.App.3d 27, 34 . . .). A publication made in any legislative, judicial or other official proceeding authorized by law is absolutely privileged (Civ. Code, § 47, subd. 2; . . .)."

■ However, the privilege recognized in *Long* was a privilege not to be sued for defamation. ". . . the fact that a communication may be absolutely privileged for the purposes of a defamation action does not prevent its being an element of an action for malicious prosecution in a proper case. The policy of encouraging free access to the courts that underlies the absolute privilege applicable in defamation actions is outweighed by the policy of affording redress for individual wrongs when the requirements of favorable termination, lack of probable cause, and malice are satisfied. [Citations.]" (*Albertson* v. *Raboff* (1956) 46 Cal.2d 375, 382 [295 P.2d 405]. To the same effect see *Kilgore* v. *Younger* (1982) 30 Cal.3d 770, 778 [180 Cal.Rptr. 657, 640 P.2d 793], recognizing that the privilege applies to all "defamation and other actions, excepting only those for malicious prosecution.")[1]

■ Therefore, although respondents would have been afforded absolute protection against an action for libel or slander, no such absolute privilege is afforded with respect to an action for malicious prosecution. The order sustaining demurrer on the basis of privilege was not properly granted.

II

■ The court also sustained the respondents' demurrers on the basis of the power of the BMQA to conduct its own investigation and file an accusation as a result of the exercise of its own discretion. As the court more fully explained in its order sustaining demurrer to the first amended complaint, "sections 11500 to 11528 of the Government Code contemplate that it is the Board, *of its own discretion, and after its own investigation,* that initiates and files accusations; *Spear* v. *Board of Medical Examiners,* 146 Cal.App.2d 207."

---

[1]For a discussion of the distinction between the two causes of action and the public policy underlying the different treatment see Comment (1952) 5 Stan.L.Rev., page 151.

The court in *Spear* addressed a contention that the BMQA (then called the Board of Medical Examiners) had abused its discretion in not filing an accusation against a doctor after the appellant had presented evidence in support of the accusation. The court stated: "Of course, the board was not required to file an accusation merely because a request was made that an accusation be filed. The Board was required to consider the request and to determine, in its discretion, whether an accusation should be filed. It was not required to exercise its discretion in a particular manner." (*Spear* at p. 212.)

The trial court apparently reasoned from that language that even if appellant here was wrongfully accused, the conduct of respondents in reporting him to the BMQA did not cause that accusation. Rather, it was the product of the independent judgment and discretion of the board.

Respondent contends that the trial court erred, citing *Hardy* v. *Vial* (1957) 48 Cal.2d 577 [311 P.2d 494, 66 A.L.R.2d 739]. In *Hardy,* the Supreme Court established that a malicious prosecution action may be founded on a proceeding before an administrative body. Relying on section 680 of the Restatement of Torts, the court concluded: ". . . the same harmful consequences may result from the malicious institution of administrative proceedings as from judicial proceedings maliciously begun, whether criminal or civil in nature." (*Id.* at pp. 580-581.)

However, the fact that the initiation of administrative proceedings may become the basis of an action in malicious prosecution does not give rise to a cause of action in all cases. In *Hardy,* a professor of a college was dismissed as a result of charges supported by the affidavits of the various named defendants. The college made no independent investigation, nor did it verify the allegations made against Hardy. Thereafter, a hearing conducted by the State Personnel Board resulted in a finding that the charges were untrue, and Hardy was reinstated to his position. Under those circumstances, a cause of action was subsequently stated in malicious prosecution.

We observe that in this matter, unlike *Hardy,* an independent investigation was conducted by the BMQA before any charges were brought against appellant. Under those circumstances, this case more closely resembles *Werner* v. *Hearst Publications, Inc.* (1944) 65 Cal.App.2d 667 [151 P.2d 308]. In *Werner,* the complaint alleged that defendants, without probable cause and with malice, sent a defamatory letter to an investigator for the State Bar, and that the State Bar subsequently instigated disbarment proceedings against him. On appeal, the *Werner* court concluded that no cause of action for malicious prosecution could be stated by the attorney against the author of the letter. "The proceeding was not instituted by the sending of the letter

of August 14, 1941, to The State Bar. It was instituted, as above noted, by the issuance of the notice to show cause by the State Bar on December 12, 1941, about three months after the letter was received. It is to be noted that the situation here is different from the usual malicious prosecution action which is based upon a proceeding instituted by the signing of a complaint by the one who is later a defendant in the action for damages. Here the action is based upon a proceeding instituted by the signing of an order to show cause, not by one who is a defendant in this action for damages, but by a member of a local committee of The State Bar, after an independent investigation has been made by the local committee." (*Werner* at p. 672. To the same effect, see *Stanwyck* v. *Horne* (1983) 146 Cal.App.3d 450 [194 Cal.Rptr. 228].)

The BMQA is similar to the State Bar Association. Each is empowered and directed to conduct an independent investigation of all complaints from the public prior to the filing of an accusation. (Bus. & Prof. Code, § 2220; Gov. Code, §§ 11500-11528.) As a consequence, we are persuaded by the reasoning of *Stanwyck* and *Werner* that inasmuch as the BMQA conducted an independent investigation and determination prior to proceeding on the complaint, it was the BMQA, not respondents, who initiated or procured the disciplinary proceedings against appellant. Therefore, appellant failed to allege the elements required to establish an action in malicious prosecution.

### III

An independent reason exists to support the trial court's order sustaining respondent's demurrer without leave to amend. We reach this decision by accepting respondent's request that we take judicial notice of the files of the BMQA in connection with the report to that board by respondents and the charges ultimately brought against appellant. ▮ The records and files of an administrative board are properly the subject of judicial notice. (Evid. Code, § 452, subd. (c); *Harris* v. *Alcoholic Bev. etc. Appeals Bd.* (1965) 62 Cal.2d 589, 595 [43 Cal.Rptr. 633, 400 P.2d 745].) ▮ Further, this court may take judicial notice of matters which could have been noticed by the trial court, even where the trial court was not requested to take such notice. (Evid. Code § 459; *Holmes* v. *City of Oakland* (1968) 260 Cal.App.2d 378, 384 [67 Cal.Rptr. 197].) ▮ In light of the significance of the board's records, we afforded the parties an opportunity to present to this court relevant information concerning the propriety of taking judicial notice and the relevance of the material to be noticed. We then took judicial notice of files No. D-2171 and D-2416 of the BMQA.

Those files reflect that on April 20, 1977, respondents suspended the hospital privileges of Dr. Howard Olgin (not the appellant). On April 21, 1977, pursuant to Business and Professions Code section 805, respondents reported this restriction to the BMQA. The BMQA conducted an investigation of the professional conduct of Dr. Olgin. In the course of that investigation, the board discovered that appellant was either the referring physician or the assisting surgeon to Dr. Olgin in a series of gall bladder cases. The board ultimately brought charges against appellant. It is those charges which appellant asserts as the basis for his malicious prosecution action. But the action is brought not against the board, but against the hospital which originally filed a claim concerning the restricted hospital privileges of someone else.

The second amended complaint, to which demurrer was sustained, does not reflect the foregoing sequence of events. It alleges merely: "On or before November 3, 1980, defendants, and each of them, filed or caused to be filed, false reports, affidavits, and allegations with the Board of Medical Quality Assurance, which as a result thereof, charged plaintiff, falsely, with the commission of improper surgical procedures and unprofessional conduct."

■ "In determining the sufficiency of a complaint against demurrer the court considers not only the contents of the complaint but also matters of which judicial notice may be taken. [Citations.] Accordingly, a complaint otherwise good on its face is subject to demurrer when facts judicially noticed render it defective. [Citation.]" (*Iram Enterprises* v. *Veditz* (1981) 126 Cal.App.3d 603, 608 [179 Cal.Rptr. 1].) In *Iram,* the material judicially noticed reflected that a prior action (the alleged basis of an action in malicious prosecution) had been commenced not by the named defendants, but by other parties. Therefore, the demurrer to the complaint was properly sustained.

■ Similarly here, appellant attempts to state a cause of action in malicious prosecution against parties who filed a claim concerning someone else. Although the filing of that claim may have ultimately resulted in wrongful charges having been brought against appellant, the charges were not the result of respondent's use of the judicial process as a vehicle for harassing or vexing the appellant. (See *Bertero* v. *National General Corp.* (1974) 13 Cal.3d 43, 50-51 [118 Cal.Rptr. 184, 529 P.2d 608, 65 A.L.R.3d 878].)

■ An action for malicious prosecution requires that the plaintiff plead and prove that the prior action was commenced with malice directed toward

the plaintiff. (52 Am.Jur.2d, Malicious Prosecution, § 7; Restatement of Torts, 2d, § 653.)

In *Coverstone* v. *Davies* (1952) 38 Cal.2d 315 [239 P.2d 876], plaintiffs alleged that deputy sheriffs were guilty of malicious prosecution in that they wrongfully instituted criminal proceedings against a coplaintiff. The Supreme Court held that no cause of action could be stated where the defendants instituted proceedings not against those plaintiffs, but against a third party (the plaintiff's son). The court concluded: "It is thus apparent, as defendants maintain, that there is no need in this case to depart from the established rule that actions for false arrest and malicious prosecution are personal actions which do not give rise to a cause of action in anyone other than the person directly aggrieved. [Citations.]" (*Id.* at 324.)

■ Therefore, although one of the stated grounds was incorrect, the trial court properly sustained without leave to amend respondent's demurrer to appellant's second amended complaint. ■ A proper judgment or decision of a lower court will be affirmed regardless of the correctness of the grounds upon which the court reached its conclusion. (*Davey* v. *Southern Pacific Co.* (1897) 116 Cal. 325, 329 [48 P. 117].)

The judgment is affirmed.

Kingsley, Acting P. J., and McClosky, J., concurred.