Shirish **WAGH**, Plaintiff–Appellant,

v.

**METRIS DIRECT, INC.; Metris Direct Services, Inc.; Metris Companies, Inc.; Directalert, Defendants–Appellees.**

No. 02–15580.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 7, 2003.

Filed Nov. 7, 2003.

As Amended on Denial of Rehearing Dec. 15, 2003.

Ernest M. Thayer, San Francisco, CA, for the Plaintiff–Appellant.

Tomio B. Narita and David B. Moyer, Wineberg, Simmonds & Narita LLP, San Francisco, CA, for the Defendants–Appellees.

Before B. FLETCHER, TASHIMA, Circuit Judges, and POLLAK, District Judge.*

## OPINION

BETTY B. FLETCHER, Circuit Judge:

Plaintiff–Appellant Shirish Wagh appeals the United States District Court's Fed.R.Civ.P. 12(b)(6) dismissal of his civil RICO action against Metris Direct, Inc.; Metris Direct Services, Inc.; Metris Companies, Inc.; and DirectAlert ("Defendants–Appellees" or "Metris Direct") for failure to state a claim. Wagh argues that the district court erred in dismissing with prejudice his claims brought under 18 U.S.C. § 1962(a)-(d). We affirm.

---

* The Honorable Louis H. Pollak, Senior United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

## JURISDICTION AND STANDARD OF REVIEW

■ This court has jurisdiction under 28 U.S.C. § 1291 over an appeal from a district court's dismissal of an action under Fed.R.Civ.P. 12(b)(6) for failure to state a claim. We review de novo a dismissal for failure to state a claim, *see Cervantes v. United States,* 330 F.3d 1186, 1187 (9th Cir.2003), but review denials of discovery and leave to amend for abuse of discretion, *see Panatronic USA v. AT&T Corp.,* 287 F.3d 840, 846 (9th Cir.2002); *Nat'l Audubon Soc'y, Inc. v. Davis,* 307 F.3d 835, 853 (9th Cir.), *amended by* 312 F.3d 416 (9th Cir.2002).

## FACTUAL AND PROCEDURAL BACKGROUND

Wagh filed this action against Metris Direct in California Superior Court, County of San Francisco, alleging that Metris Direct had caused Citibank, his credit card issuer, to bill Wagh $119.95 for membership in DirectAlert, an organization which provides credit protection. Wagh alleged that he had not contracted for membership in DirectAlert. In his initial complaint, Wagh sued Metris for fraud, money had and received, declaratory and injunctive relief, and compensatory and punitive damages. Wagh sued on behalf of himself and all others whom he alleged Metris had improperly caused to be billed for such memberships.

After Metris's successful demurrer to Wagh's fraud claim, Wagh filed a first amended complaint in state court. In addition to the remaining original claims for money had and received, and declaratory relief, Wagh alleged that Metris had violated the Consumers Legal Remedies Act, CAL. CIV. CODE § 1750 *et seq.;* the Unfair Business Practices Act, CAL. BUS. & PROF. CODE §§ 17200, 17500; and the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 *et seq.* Specifically, Wagh alleged that Metris Direct had violated 18 U.S.C. § 1962(c), which prohibits participation in activities constituting "a pattern of racketeering activity or collection of unlawful debt."

Metris Direct removed Wagh's action to the United States District Court for the Northern District of California pursuant to 28 U.S.C. § 1441(b), asserting federal question jurisdiction. The district court sua sponte ordered Wagh (a) to show cause why his RICO cause of action should not be dismissed for failure to state a claim; (b) to show why in the absence of the RICO claim, the court should not dismiss the case for lack of subject matter jurisdiction; and (c) in the event that he could state a claim under RICO, to file a RICO case statement pursuant to the court's RICO Standing Order.

Wagh filed an amended RICO case statement and, later, an amended complaint.[1] In his amended case statement, Wagh alleged *inter alia* that the Appellees had committed mail fraud because they "caused, and are causing, bills for products and/ or services ... to be sent to plaintiff and the members of his class by the United States Mail. Because none of those recipients either has contracted, or is indebted, therefor, each of those millions of bills has been and is being sent in violation of 18 U.S.C. section 1341." Additionally, Wagh now claimed that Metris Direct had violated all the subsections of the RICO statute.

Metris filed a response to the amended RICO case statement, arguing that Wagh had not stated and could not state a claim under any of the four subsections of the

---

1. Wagh had filed a RICO case statement two days earlier, but then filed an amended case statement.

RICO statute. The district court ruled that it would construe Metris Direct's response as a motion to dismiss, and ordered Wagh to respond to the motion. Wagh responded, arguing that he had stated a claim under § 1962(b), (c), and (d), and that if the court dismissed his § 1962(a) claim, it should do so without prejudice.

The district court granted Metris Direct's motion to dismiss, finding that Wagh had failed to plead the RICO mail fraud claim with the requisite specificity. The court found that Wagh would not be able to amend his § 1962(a) and (b) claims, and therefore dismissed them with prejudice. Because his § 1962(c) and (d) claims could be amended to correct the pleading defect, however, the court dismissed them with leave to amend.

Wagh filed a motion for relief from the district court's order, claiming that the court was mistaken in its assertion that, at oral argument on the motion to dismiss, he had conceded inability to cure the pleading defects under § 1962(b) without discovery. The court dismissed the motion for relief from the order under its local Civ. L.R. 7–9(a) because Wagh had failed to obtain leave of the court to file such a motion.

Wagh then filed a second amended complaint in district court, in which he restated his § 1962(c) and (d) claims and sought declaratory and injunctive relief. He now alleged, as a predicate for his RICO claims, that the defendants-appellees had violated 18 U.S.C. §. 1343, which prohibits wire fraud, because they "caused, and are causing, bills for products and/ or services ... to be sent to Citibank by wire." The court dismissed Wagh's RICO claims with prejudice, declined to exercise supplemental jurisdiction over the state law claims, and remanded the case to San Francisco Superior Court. *Wagh v. Metris Direct, Inc.,* 2002 WL 257846 (N.D.Cal., Feb.20, 2002). Wagh appealed.

## DISCUSSION

### I. The RICO Standing Order

Wagh argues that the district court's use of the RICO Standing Order applies the heightened pleading standards prohibited by *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). This is essentially a challenge to the Standing Order as being in conflict with Fed.R.Civ.P. 8(a). As far as can be determined, this court has never before ruled on the compliance of RICO standing orders with the basic pleading requirements of Rule 8(a) or the stricter pleading requirements of Rule 9(b).

Some district judges in at least four districts in the Ninth Circuit use RICO standing orders. Individual judges in the Northern, Central, and Southern Districts of California, and the District of Hawai'i have issued orders that direct plaintiffs claiming RICO violations to state their allegations in detail and with specificity, including a detailed description of the pattern of racketeering activity or collection of unlawful debts alleged for each RICO claim. *See Gutierrez v. Givens,* 1 F.Supp.2d 1077, 1087 (S.D.Cal.1998) (describing the purpose of such orders as providing "notice to the defendant and the filtering out of meritless complaints"); *May v. U.S. Chamber of Commerce,* 1996 WL 116829 (N.D.Cal.1996) (ordering the plaintiff to "include a RICO statement consistent with the standing orders of the court"); *Lui Ciro, Inc. v. Ciro, Inc.,* 895 F.Supp. 1365 (D.Hawai'i, 1995) (stating that RICO plaintiffs are required, by a standing order of the court, to file a RICO case statement within 30 days of filing the complaint); *In re Bank of Credit and Commerce Int'l Depositors Litig.,* 1992 WL 696398 (C.D.Cal.1992) (referring to the Order used in that case).

According to a leading treatise on civil RICO actions, "[m]any federal district

courts have issued standing orders in civil RICO cases requesting that plaintiff's counsel provide certain details concerning their RICO claim." DAVID B. SMITH & TERRANCE G. REED, CIVIL RICO App. 9A, 9–100.17 (March 2003) (citing 15 different district courts, in the Second, Third, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, and D.C. Circuits, as among those that issue RICO Standing Orders). Most district courts, including the district court in this case, either adopt verbatim or use a version of the standing order issued by Judge Alvin Krenzler in *Lyman Steel Co. v. Shearson Lehman Bros., Inc.,* Civ. No. C–86–355, 1986 U.S. Dist. LEXIS 29346 (N.D.Ohio 1986).

Despite the widespread use of these orders, however, only three circuits have either directly or indirectly addressed the question of their compliance with notice pleading requirements. In *Figueroa Ruiz v. Alegria,* the First Circuit affirmed in relevant part the district court's dismissal with prejudice of RICO claims for failure to comply with its order "calling for detailed explication of the factual underpinnings of the RICO claims." 896 F.2d 645, 646 (1st Cir.1990). Upholding the lower court's use of the order to compel greater specificity in the plaintiffs' complaint, the court held that the "need for expeditious and orderly progress of . . . litigation" is particularly pronounced in a civil RICO suit because of its "quasi-criminal" nature and consequent "stigmatizing effect on those named as defendants." *Id.* at 650. Courts should therefore "strive to flush out frivolous RICO allegations at an early stage of the litigation." *Id.* The court found that the order was designed with this goal in mind, and therefore found no abuse of discretion in the district court's dismissal of the RICO claims.[2]

The Fifth Circuit has also upheld the use of RICO standing orders at least three times. In *Old Time Enterps. v. Int'l Coffee Corp.,* it held that the district court did not err in "requiring a more specific, clear, and direct statement of the RICO claims." 862 F.2d 1213, 1217 (5th Cir.1989). Noting that "the Standing Order [served the plaintiff] with notice of the requirements for pleading a RICO claim in accordance with the relevant substantive and procedural rules," *id.* at 1218, the court affirmed the dismissal for failure to state a claim. *Id.* at 1218–19. The court again rejected a challenge to a standing order as being in conflict with Rule 8(a) in *Elliott v. Foufas,* where it held that the order was "entirely consistent with the requirements of Rule 8 that pleadings contain a plain statement of the claim and that pleadings be direct and concise." 867 F.2d 877, 880 (5th Cir.1989). In late 1990, asserting that such orders are a "useful, sometimes indispensable, means to understand the nature of the claims asserted and how the allegations satisfy the RICO statute," the court wrote that "[t]he propriety of a district court's requirement of a case statement to summarize the nature of RICO claims is . . . well-established in this circuit." *Marriott Brothers v. Gage,* 911 F.2d 1105 (5th Cir. 1990).

The Second Circuit, however, has adopted a more cautious approach to the use of such standing RICO orders. In *Commercial Cleaning Services, L.L.C. v. Colin Service Systems, Inc.,* the district court had dismissed the RICO claim on the alternative ground that the plaintiff had violated its standing order and therefore failed to "furnish information relating to the claim." 271 F.3d 374, 385 (2d Cir. 2001). The court found that the "Standing

---

**2.** This standard of review was applied because the district court had dismissed the complaint with prejudice under Fed.R.Civ.P. 41(b) for lack of prosecution and disregard of a court order.

828

Order call[ed] for information far in excess of the essential elements of a RICO claim. . . . To the extent [the order] called for presentation of information going beyond what a plaintiff needs to present to establish a legally sufficient case, plaintiff's inability to produce it could not justify the grant of judgment to defendant." *Id.* at 386.

One key distinction between the First and Fifth Circuit cases on one hand, and the Second Circuit case on the other, is that the former deal with situations in which the alleged predicate offenses were mail or wire fraud, while the latter discussed an action in which the underlying offense was a violation of the Immigration and Nationality Act. As both the First and Fifth Circuits recognized, complaints alleging fraud must comply with both Fed. R.Civ.P. 8(a) *and* 9(b). *See Figueroa Ruiz,* 896 F.2d at 648 n. 3; *Old Time Enterps.,* 862 F.2d at 1217. That is, not only must the statement of the claim "show[ ] that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), but "the circumstances constituting fraud . . . [must] be stated with particularity." Fed R. Civ. P. 9(b). It is therefore likely that the holdings in the cases affirming the use of RICO Standing Orders were, at least in part, based on the fact that the plaintiffs had failed to plead the fraud claims in sufficient detail.

We find the reasoning of the Second Circuit persuasive. The use of RICO Standing Orders to compel plaintiffs to produce detailed RICO Case Statements, which are then treated by the district court as part of that party's pleadings, can in certain circumstances require far more information from plaintiffs than is required under either Rule 8(a) or 9(b) of the Federal Rules. Nevertheless, in this case, we hold that Wagh's pleadings failed to satisfy even the basic requirements of those rules,

and that the dismissal for failure to state a claim was therefore correct.

## II. Wagh's RICO claims

### A. Wagh's § 1962(a) claim

■ 18 U.S.C. § 1962(a) provides in relevant part:

It shall be unlawful for any person who has received any income derived, . . . from a pattern of racketeering activity or through collection of an unlawful debt . . . to use or invest . . . any part of such income . . . in acquisition of any interest in, or the establishment or operation of, any enterprise.

Section 1964(c) confers standing to bring civil RICO claims only upon those persons "injured in [their] business or property by reason of a violation of section 1962." Read together, these two provisions require that "a plaintiff seeking civil damages for a violation of § 1962(a) must allege facts tending to show that he or she was injured by the use or investment of racketeering income." *Nugget Hydroelectric L.P. v. Pacific Gas & Elec. Co.,* 981 F.2d 429 (9th Cir.1992) (joining three other circuits in their application of the "investment injury" requirement). *See also* Smith & Reed ¶ 6.04[5][a], at 6–101 (listing the cases in which four additional circuits imposed an "investment injury" requirement for § 1962(a) standing, bringing the total to eight circuits).

Wagh argues that the district court misapplied *Nugget* by requiring him to plead that he was injured by the use or investment of the funds taken from him. Instead, he urges this court to hold that he need only allege that he was injured by the use or investment of funds previously received from others in violation of the mail fraud, wire fraud, and RICO statutes, and that his allegation that the appellees "reinvest in themselves" the income generated by "the enterprise's pattern of racketeer-

ing activity," is therefore sufficient to state a claim.

■ We disagree, for several reasons. First, both the Supreme Court and this court have held that under § 1964(c), a RICO plaintiff must allege a direct causal link between his injury and the defendant's violation. *See Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268–69, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992) (rejecting a reading of the statute that would allow recovery "simply on showing that the defendant violated § 1962, the plaintiff was injured, and the defendant's violation was a 'but-for' cause of plaintiff's injury"); *Hamid v. Price Waterhouse*, 51 F.3d 1411, 1419 (9th Cir.1995) ("In order to plead a civil RICO claim, appellants must show that the defendants' violation of section 1962 was the proximate cause of their injury.").

Second, in *Nugget* we specifically refused to follow the approach of the Fourth Circuit, which had held that a plaintiff may satisfy the standing and pleading requirements for RICO violations by alleging an injury from racketeering acts generating income that was *subsequently* used in violation of § 1962. *Nugget*, 981 F.2d at 437 (declining to adopt the reasoning in *Busby v. Crown Supply, Inc.*, 896 F.2d 833 (4th Cir.1990)). *Nugget's* holding is applicable here. Noting that *Busby* allowed recovery although "one element of the violation, the use of the proceeds, may not have contributed to or caused the injury," this court concluded that

> [S]ection 1964(c) does not support such a reading, for it would allow an individual to recover for injuries caused by an action that does not constitute a violation of section 1962(a) even though section 1964(c) speaks not of an 'element of a violation' but rather only of a 'violation.' To allow recovery for an injury arising from a mere element of a violation, rather than an actual violation, of section

1962(c), we would have to have before us a statute worded differently from the one Congress passed.

*Id.*

Wagh's argument that he should be allowed to recover for an injury arising from the investment of income gained from a *previous* act of racketeering is similarly unavailing. He has asserted that Metris Direct defrauded him, but has failed to assert that they have injured him by the use or investment of the income derived from the predicate acts of fraud. He has therefore alleged only an element of the RICO violation covered by § 1962(a).

Wagh's reinvestment theory fares no better. Several courts, applying an investment injury requirement, have held that "the acquisition and reinvestment of the proceeds of racketeering activity in the general affairs of an enterprise" does not qualify as investment injury. *See* Smith & Reed ¶ 6.04[5][a], at 6–104 n. 226 (citing one Eighth Circuit case, and four district court cases from three different circuits, including *In re Rexplore, Inc. Sec. Litig.*, 685 F.Supp. 1132, 1141 (N.D.Cal.1988)).

We therefore hold that for Wagh to have standing to sue under §§ 1962(a) and 1964(c), he must have alleged that funds derived from the alleged racketeering activity (mail fraud) were used to injure him. Since Wagh conceded below that he was unable to amend his complaint without discovery, the only remaining question on his § 1962(a) claim is whether he was entitled to discovery.

■ The district court found that Wagh was not entitled to conduct discovery in order to cure the § 1962(a) pleading defect. As the court noted in its order granting the first motion to dismiss, discovery at the pleadings stage is only appropriate where factual issues are raised by a Rule 12(b) motion. (citing *Jarvis v.*

*Regan*, 833 F.2d 149, 155 (9th Cir.1987)). There are no factual issues in dispute with regard to this claim; even if accepted as true, Wagh's allegations are insufficient to state a claim for relief under § 1962(a). The district court did not abuse its discretion in finding that Wagh was not entitled to discovery.

### B. Wagh's § 1962(b) claim

 18 U.S.C. § 1962(b) provides in relevant part:

> It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise.

In order to state a claim under § 1962(b), a plaintiff must allege that "1) the defendant's activity led to its control or acquisition over a RICO enterprise, and 2) an injury to plaintiff resulting from defendant's control or acquisition of a RICO enterprise." *Sebastian Int'l, Inc. v. Russolillo*, 186 F.Supp.2d 1055, 1068 (C.D.Cal. 2000) (internal citations omitted). This pleading requirement means that in addition to alleging facts sufficient to assert standing, Wagh must allege "a specific nexus between the control of the enterprise and the racketeering activity." *Sea–Land Serv., Inc. v. Atlantic Pacific Int'l*, 57 F.Supp.2d 1048, 1055 (D.Hawai'i 1999).

Wagh argues that the district court's dismissal without leave to amend was in error, because although he believes that he has already stated a claim for relief under § 1962(b), he would also be able to amend his pleading to satisfy any stricter requirements imposed by the district court, without needing discovery.

 Leave to amend is generally within the discretion of the district court. *See, e.g., Nat'l Audubon Soc'y*, 307 F.3d at 853. The district court's discretion to deny leave to amend is particularly broad where the plaintiff has previously filed an amended complaint. *See, e.g., Chodos v. West Publ'g Co.*, 292 F.3d 992, 1003 (9th Cir.2002).

Nearly four months passed between April 4, 2001, when Wagh first asserted a RICO claim (under § 1962(c), not § 1962(b)), and July 25, when he responded to the district court's order to show cause. Wagh first claimed a violation under § 1962(b) on July 25 in his amended RICO case statement, but did not include more than the vaguest allusions to the acquisition or maintenance of any interest in or control of the alleged enterprise. Moreover, although Wagh maintains that he is able to amend his pleadings to state a claim under § 1962(b), he has given no indication—either in argument before the district court, or in his briefs to this court—what additional details he could provide without discovery. Given the length of time that Wagh has alleged a violation of the RICO statute (albeit a different section), and the paucity of facts that would establish the bare bones of his claim, we conclude that the district court did not abuse its discretion in dismissing Wagh's § 1962(b) claim without granting leave to amend.

### C. Wagh's § 1962(c) claim

 18 U.S.C. § 1962(c) provides in relevant part:

> It shall be unlawful for any person employed by or associated with any enterprise ... to conduct or participate ... in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

"For the purposes of section 1962(c), RICO plaintiffs must allege a defendant—the 'person' or 'persons'—who is distinct from the enterprise whose business the defendant is conducting." *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529 (9th Cir.1992).

The term "enterprise" is defined in the statute as (1) "any individual, partnership, corporation, association, or other legal entity" and (2) "any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4) (West 2003). Wagh's only theory of enterprise on appeal is that the defendants-appellees, two of their employees, and Citibank together constitute the enterprise. He therefore alleges that these corporations and individuals have formed an association in fact.

■■■ Under this Circuit's interpretation of the enterprise element, "the predicate acts of racketeering activity, by themselves, do not satisfy the RICO enterprise element." *Chang v. Chen*, 80 F.3d 1293, 1299 (9th Cir.1996) (discussing the minimum requirements for an associated-in-fact enterprise). A RICO plaintiff must allege a structure for the making of decisions separate and apart from the alleged racketeering activities, because "the existence of an enterprise at all times remains a separate element which must be proved." *Id.* (citing *U.S. v. Turkette*, 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981)).

In this case, Wagh has not alleged a decision-making structure for the enterprise "beyond that which was inherent in the alleged acts of racketeering activity." *Id.* at 1300. *See also Simon v. Value Behavioral Health, Inc.*, 208 F.3d 1073, 1083 (9th Cir.2000) ("[A] group does not constitute an enterprise unless it exists independently from the racketeering activity in which it engages."). As the district court noted in its second order granting Metris Direct's motion to dismiss,

> The basis of [Wagh's] allegation is apparently that "a normal credit card transaction" between Defendants, Citibank, and [Wagh] is an action sufficient to satisfy the criminal enterprise requirement. Again, however, Plaintiff has failed to meet the enterprise re-

quirements established by the Ninth Circuit in presenting this theory of enterprise. Plaintiff has not alleged that Defendants and Citibank have established a system of making decisions in furtherance of their alleged criminal activities, independent from their respective regular business practices. Nor has Plaintiff alleged that an independent system of distributing the proceeds of money obtained from persons like Wagh exists between the Defendants and Citibank.

*Wagh v. Metris Direct, Inc.*, 2002 WL 257846, at *3.

Wagh has therefore failed to allege the elements of a violation of § 1962(c), and the dismissal of this claim was correct.

**D. Wagh's § 1962(d) claim**

■■■ 18 U.S.C. § 1962(d) provides that "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." Since Wagh has not satisfied the pleading requirements for any of those subsections, he has also not alleged sufficient facts to state a claim under this section of the RICO statute. Moreover, since all his other RICO claims were dismissed without leave to amend, dismissal without leave to amend this claim was also appropriate. *See Religious Tech. Ctr. v. Wollersheim*, 971 F.2d 364, 367 n. 8 (9th Cir.1992).

**III. The District Court's dismissal with prejudice**

■■■ In addition to his arguments that the district court erred by dismissing his RICO claims without granting leave to amend, Wagh argues that it was error to dismiss those claims with prejudice before remanding his remaining claims to state court, thereby preventing him from pursuing the RICO claims in that forum. He asserts that "the pleading requirements of

California state courts for RICO are less stringent than are those of the federal courts."

■■■■ The district court's Rule 12(b)(6) dismissal with prejudice operates as an adjudication on the merits of the claims under Fed.R.Civ.P. 41(b). Even though state courts have concurrent jurisdiction over RICO actions, *Tafflin v. Levitt*, 493 U.S. 455, 458, 110 S.Ct. 792, 107 L.Ed.2d 887 (1990), given the pleading flaws in this case, res judicata bars Wagh from reasserting his RICO claims in state court.

In his response to the first motion to dismiss his RICO claims, Wagh requested that the district court dismis his § 1962(a) claims without prejudice, asserting that discovery would enable him to plead this claim with greater specificity. The district court's decision to dismiss this claim with prejudice was not an abuse of its discretion. Wagh argues here, as he did before the distirect court, that he would be able to amend his § 1962(a) claim if the district court allowed discovery. As we discussed above, however, Wagh ws not entitled to conduct discovery at this stage of the proceedings because no factual issues were in dispute.

Futhermore, at no point did Wagh request that any of his other RICO claims be dismissed without prejudice so that he could pursue them in state court, nor did he voluntarily dismiss the claims so as to avoid the preclusive effect of a dismissal on the merits.

AFFIRMED.